IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA vs. | Case No. **16-1893 (PAD)** |
|---|---|
| JUAN CARLOS DE LOS SANTOS-CASTILLO<br>　　　　Defendant | |

### DEFENDANT'S SENTENCING MEMORANDUM

**TO THE HONORABLE COURT:**

**NOW COMES** Defendant **JUAN CARLOS DE LOS SANTOS-CASTILLO,** through the undersigned Counsel, and respectfully files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in *18 U.S.C. 3553(a).* For the arguments respectfully expressed in this Memorandum, as well as the sentencing factors listed at *18 U.S.C. 3553, et seq.,* the Defendant's position is that a sentence that does not require imprisonment or the imposition of a fine is appropriate in this case.

### ARGUMENTS

**1. Sentencing under Booker**

In United States v. Booker, *543 U.S. 220 (2005),* the Supreme Court found those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, *18 U.S.C. 3553(b)(1),* or which rely upon the Guidelines' mandatory nature, *18 U.S.C. 3742(e),* incompatible with its Sixth Amendment holding. Booker, *125 S. Ct. at 756.* In sentencing, the district courts, following the dictates of Booker and its progeny, must

1

consider guideline ranges but they are only one factor among all others. Pursuant to *Section 3553(a),* sentencing factors and case law hold that Courts must "*impose a sentence 'sufficient but not greater than necessary' to achieve the goals of sentencing.*" Kimbrough v. United States, *128 S. Ct. at 570; 18 U.S.C. 3553(a).* Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in *18 U.S.C. 3553(a).*

The primary directive in *Section 3553(a)* is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. *Section 3553(a)(2)* states that such purposes are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 3553(a) further directs sentencing courts to consider the following factors:

    1) the nature and circumstances of the offense and the history and characteristics of the defendant (Section 3553(a)(1);

    2) the kinds of sentences available (Section 3553(a)(3);

    3) the need to avoid unwarranted sentence disparities among defendants with similar records who have

been found guilty of similar conduct (Section 3553(a)(6); and

4) the need to provide restitution to any victims of the offense. (Section 3553(a)(7)).

Other statutory sections also give the district court direction in sentencing. Under *18 U.S.C. 3582*, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the *Section 3553(a)* factors, the Judge is required to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Under *18 U.S.C. 3661*, "*no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.*" This statutory language certainly overrides the (now advisory) policy statements in **Part H** of the sentencing guidelines, which list as "*not ordinarily relevant*" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See *U.S.S.G. 5H1*. See also United States v. Nellum, *2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005)* (Simon, J.)

In sum, in every case, a sentencing court must now consider all of the *Section 3553(a)* factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in *Section 3553(a),* these statutory sentencing factors should

3

generally trump the guidelines. See <u>United States v. Denardi,</u> *892 F.2d 269, 276-77 (3d Cir. 1989)* (Becker, J, concurring in part, dissenting in part) (arguing that since *Section 3553(a)* requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**2. Application of the Statutory Sentencing Factors to the Facts**

The following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**(a). The Nature and Circumstances Surrounding the Offense**

Mr. De Los Santos, since the beginning of this case admitted full responsibility for his participation in violation of *8 U.S.C. 1326(a)(2);* an illegal reentry into United States Territory after prior removal. It is important to point out that, immediately after his detainment by FURA Officers on December 12th of 2016, the Defendant was interviewed at the FURA Precinct in Loiza, Puerto Rico, at which time the Defendant accepted responsibility for his participation in the offense later charged. The Defendant has not once, since before his detention on December 12th of 2016, denied responsibility for his actions, or has he attempted to excuse them using anything but the truth. Even at the time of his removal from Puerto Rico, after being apprehended by TSA Officers in the Luis Munoz Marin International Airport on July 2nd of 2016, the Defendant informed the Officers of his illegal status and admitted to having entered the United States without inspection.

During the course of the present judicial procedure, the

4

Defendant has accepted the wrongfulness of his actions, but has clearly and sincerely explained the reason for such wrong action (his illegal reentry into the US on November of 2016). The Court should take notice that at the time of Mr. De Los Santos's removal from Puerto Rico on July 2nd of 2016, his wife, Mrs. Angelica Carrasquillo (a United States Citizen) had just given birth to the couple's first child, only one month before. We also respectfully ask the Court to take notice of the fact that Mr. Juan Carlos De Los Santos and Mrs. Angelica Carrasquillo Collazo, were legally married in San Juan, Puerto Rico, on February 6, 2016; and that their child, Angel David De Los Santos Carrasquillo, was born on the 31st of May of 2017, in Trujillo Alto, Puerto Rico. See *Exhibits A & B,* Docket No. 22. Again, the Defendant does not condone is action, but he certainly has validly explained it. As it has been stated by the Defendant, as well as it appears in the **Presentence Investigation Report** (Docket No. 40), upon his removal the Defendant, "*was desperate to reunite with his wife and child.*" See *Acceptance of Responsibility*, **Presentence Investigation Report**, Paragraph 14, Page #7.

The reason for such *desperation* is simple; when in Puerto Rico, the Defendant was the sole breadwinner for the family. At the time of his removal, the Defendant's wife had recently given birth and his newborn baby was less than five (5) weeks old. In other words, his wife was physically and mentally incapable of getting a job in order to provide for her child and for herself. The Defendant's circumstances were anything but normal or ordinary. On the contrary, such dire circumstances combined with the fact that he was the breadwinner of the family (which had just increased by one), created the accurate scenario for noncompliance with an immigration

5

statute. The Dictionary For Judicial Terms defines a State of Necessity as a "*Situation of grave danger or extreme necessity, in which the urgency of a remedy excuses or forgives a legal infraction and the economic loss of others.*" (Translation From Spanish Provided) Rivera Garcia, Ignacio, Dictionary For Judicial Terms, Third Edition Revised, Lexis Publishing, 2000. Short of having alleged a state of necessity as a defense in the present case, we would like to respectfully voice our opinion to the Court in regards to the circumstances surrounding the Defendant's offense. It is our most humble opinion that a decision to break the law, in the way in which the Defendant has broken it when illegally reentering the United States (no violence, no victims, no damage or any kind) and under the uncertainty of his loved ones well being, is no decision at all.

This Court should take judicial notice that, Mr. De Los Santos, immediately after his arrest on December 13, 2017 (even before), he accepted and informed of the wrongfulness and illegality of his reentry. Also based upon his admission of full responsibility, the Defendant chose to change his original plea to one of Guilty, as part of his decision to enter a Straight Plea in the case at hand. The Defendant has reasonably explained the reason for his action and has truthfully expressed Remorse and Repentance for such action. The Defendant has gone so far as to honestly state that he will never repeat such offense. See *Acceptance of Responsibility*, **Presentence Investigation Report,** Paragraph 14, Pages #7-8. Based on the imminent dangers that surrounded his removal on July 2nd of 2016, economic and health wise, the Defendant made the mistake of committing the offense charged (illegal reentry). Time has passed since such offense was committed

and the Defendant's family situation has changed. Considering the possibility of being deported to his native country (Dominican Republic) as a result of the present judicial proceedings, the Defendant has used his time wisely in the planning of his family's future, under all possible scenarios. In other words, contrary to the circumstances surrounding his unforeseen and unplanned removal of July 2nd of 2017, this time around the wellbeing of his family will not be jeopardized. The *imminence of danger* and *state of necessity* that was created on July of 2016, which did **not condone** but did explain the Defendant's action, will not exist.

The Defendant has accepted full responsibility, has expressed remorse and repentance for the offense committed and has promised never to commit such offense. His expressions are honest and straightforward; he has learned his lesson and regardless of the circumstances, has acknowledged the wrongfulness of his action and has sworn never to repeat it. But nevertheless, as a good father and husband would do, the Defendant has taken the necessary steps in order to never be placed in such binding position again. The Defendant is presently in the midst of an immigration procedure in order to request (and hopefully receive) legal residence in the United States. And as the Defendant has stated, regardless of such procedure or the outcome of the present criminal proceeding, he will not make the mistake of illegally reentering the US again. The Defendant and his wife have already decided to relocate their family to the Dominican Republic, in the event that this Honorable Court orders Mr. De Los Santos's removal from the United States, as part of the Judgment of the case at hand. Relocation is feasible and easily achieved due to the fact that most of the

Defendant's family resides in the Dominican Republic, including both parents and all of his maternal siblings, all of whom have willingly consented to help him and his pregnant wife (due for October 2017) and one year old son, in the transition.

**(b) History and Characteristics of the Defendant**

The defendant was born, Juan Carlos De Los Santos, on July 26, 1977 in the Dominican Republic. He is the youngest of three (3) children born to his father, Domingo De Los Santos, and the oldest of four (4) children born to his mother, Ana Rosa Castillo. Both of the Defendant's parents and all of his maternal siblings live in the Dominican Republic and the Defendant has good relationships with all of them. The Defendant was reared primarily by his maternal grandmother, Carmela De Los Santos, who did not have much financially (a lot of economic necessity existed in the household), but always provided him with love and care and instilled good moral values into him. There were no incidents of domestic violence or child abuse in the Defendant's family, nor any history of mental health issues. See *Family Ties, Family Responsibilities, and Community Ties*, **Presentence Investigation Report**, Paragraphs 29-30, Pages #10-11. Mr. De Los Santos's childhood was a good one, wherein good values were instilled and his needs were sufficed, even though the household lacked essential utilities, like electricity. For his childhood, there is no history of physical, emotional/psychological, sexual abuse, alcohol or drug use within the household. The Defendant lived in the company of his grandparents until the age of 25, when he first arrived in Puerto Rico, during the month of December of 2002.

The Defendant has made a life in the Commonwealth of Puerto Rico. Although he had to stop his schooling at the age of ten in order to work and assist his grandparents economically, the Defendant has proven to be a hard worker and good provider since he was a child. In Puerto Rico, the Defendant worked as a construction worker and fisherman, earning enough to acquire his own fishing vessel. Up until the beginning of the present judicial procedure, the Defendant had made a habit (without the necessity of a court order or child support proceeding) to send $300.00-$500.00 monthly (depending to the month's acquired income) to the mother of his first child, Magaly De La Cruz, who currently resides in Miami, Florida. Mr. De Los Santos maintains regular contact with Mrs. De La Cruz and with his first born, Carlos Manuel De Los Santos, who is now eleven (11) years old. The Defendant never had any incidence of domestic violence with Mrs. De La Cruz, nor he has ever had such an incidence with his current wife, or anyone else, for that matter.

The Defendant has no prior criminal convictions, neither in Puerto Rico nor anywhere else; he has never been criminally charged nor accused of committing any crime, prior to the current offense. The Defendant possesses no criminal record as an adult, nor any juvenile adjudication, neither in the United States nor his native country. See *Juvenile Adjudication(s) & Adult Criminal Conviction(s),* **Presentence Investigation Report**, Paragraphs 25-26, Page #9. And as it is stated in the Report, since the commencement of this case the Defendant has complied with every single condition set by the Probation Officer and/or by this Court. The Defendant has had no adverse incidents while on pretrial release, nor any disciplinary issues during his

BOP's custody. He did not receive any negative chart or warning during his stay in MDC. The Defendant has cooperated with authorities and has never impeded or obstructed justice any way. The offense charged with (illegal reentry), asides the time, money, and effort needed in order fulfill this judicial process, has not affected any person (no identifiable victim) nor damaged any property. See *BOP Compliance, Pretrial Compliance, Victim Impact & Adjustment for Obstruction of Justice*, **Presentence Investigation Report**, Paragraphs 10-13, Page #6.

The Defendant has no history of mental or emotional problems, nor has he ever needed any type of treatment for such problems. The Defendant does not use (nor has he ever used), any type of illegal drug or controlled substance. Neither has Mr. De Los Santos ever encountered any problem relating to alcohol consumption, nor has he ever needed treatment in this area. De Los Santos rarely drinks and when he does, never to the point of inebriation. It is important to point out that at the time of his unexpected/unforeseen arrest in December 13, 2017, the Defendant's drug tests yielded negative results to all drugs. See *Mental and Emotional Health & Substance Abuse*, **Presentence Investigation Report**, Paragraphs 38-41, Pages #13-14. The facts and the evidence provide as part of this process, clearly show that Mr. De Los Santos is a non-violent individual, who has never encountered any criminal problems with the law before this one; that has resided in Puerto Rico for the last fifteen (15) years approximately and created a family here; that during his stay in the island has worked hard and honestly as a construction worker and a fisherman in order to provide for himself and his family; that has never encountered problems with alcohol or

substance abuse, domestic violence or mental health; and that he committed an offense misguided by the desperation of a father/husband confronted with the probability of placing his recently pregnant wife and one month old son in financial danger and very possible physical danger, by his absence. Furthermore, *"[T]he defendant has clearly demonstrated acceptance of responsibility for the offense."* See *Offense Level Computation*, **Presentence Investigation Report**, Paragraph 23, Page #9.

3. <u>**The Kinds of Sentences Available**</u>

    **(a) The Plea**

On April 20, 2017, the Defendant entered a Straight Plea of Guilty to the Indictment, and pursuant to the guidelines stipulated in Rule 11 of the <u>Federal Rules of Criminal Procedures</u>. The initial base offense level (BOL) for the offense of an illegal reentry, *8 U.S.C. 1326(b)(1),* according to *Section 2L1.2* of the <u>United States Sentencing Guidelines Manual</u>, is determined as level eight (8). The Defendant has no criminal history, there are no victims created by the offense, no obstruction of justice, and/or no adverse situations whatsoever that would require an increase in the computation. Finally, in accordance with *Section 3E1.1(a)* of the <u>USSG</u>, the offense level initially stipulated goes through a two (2) level reduction due to the Defendant's acceptance of responsibility. Thus, establishing a total offense level of six (6), a criminal history category of I, and an applicable range in Zone A of the Sentencing Table.

    **(b) The Sentencing Range**

According to the **Presentence Investigation Report**, based on Mr. De Los Santos's total offense level of six (6), he qualifies for a waiving of the

imposition of a fine and a term of imprisonment is not required. *"Based upon a total offense level of 6 and a criminal history category of I, the guideline imprisonment range is from 0 to 6 months. Since the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required. USSG §5C1.1(b)"* See *Custody*, **Presentence Investigation Report**, Paragraph 54, Page #16.

*"Based upon the defendant's financial profile, it appears that he does not have the ability to pay a fine within the advisory guideline range. If the Court after review of the financial disclosure makes a finding that the imposition of a fine within the required range is not viable, the Court may impose a lesser fine or waive the imposition of the same. USSG §5E1.2(e)."* See *Financial Condition: Ability to Pay*, **Presentence Investigation Report**, Paragraph 52, Page #16.

Mr. De Los Santos respectfully submits that a sentence zero (0) prison time, adequately reflects the factors established in *Section 3553 (a)(2),* that is, it reflects the seriousness of the offense (or in this case, the lack thereof) and promotes respect for the law; it provides just punishment for this non-violent (victimless) offense to afford adequate deterrence to criminal conduct; it protects the public from further crimes of the Defendant, since it is clear that this is not an issue in the case at hand; and based on the facts of the case, it is clear that the Defendant does not need educational or vocational training, medical care, and/or other correctional treatment in any way. In regards to the imposition of a fine, the reality of the matter, as correctly expressed in the **Presentence Investigation Report**, is that Mr. De Los Santos does not have the ability to pay a fine. Because of his lack of education, his increasing family (another baby on the way), his honest professions (construction and

fishing), and the recent spending occasioned by the present proceedings, it is easy to comprehend the reality behind Mr. De Los Santos's inability to comply with the payment of a fine.

Mr. De Los Santos has never been convicted (not even charged); therefore he is a first time offender, with no criminal record whatsoever. Mr. De Los Santos left his native country in search for more opportunities and a better life. He earned an honest living working construction and selling what he fished from the sea, got married, started a new family, became an upstanding member of his community, and as he wished for, started a new and better life. Mr. De Los Santos has never been involved in any criminal activity and any/and all issues with the law that he has encountered in his entire life are directly and solely related to his immigration status.

Based on all of the factors mentioned in this Memorandum, at this time we submit very respectfully to this Honorable Court that a sentence of zero (0) imprisonment and the waiving of a fine, is just and fair in the case at hand. As to the Defendant's sentence, with have no other submissions, requests, or position, except the two factors mentioned (imprisonment and fine). Asides the Defendant's two requests aforementioned, we respectfully express that any sentence imposed by this Honorable Court will be affirmatively accepted, well received, and complied with entirely by the Defendant.

## CONCLUSION

For all of the reasons here stated, Mr. Juan Carlos De Los Santos-Castillo respectfully submits that he be sentenced pursuant to the applicable statutes, and based on the facts of the case, the evidence provided, and the

presentence investigation, as expressed in the **Presentence Investigation Report**. Mr. De Los Santos respectfully submits that no term of imprisonment be imposed, since such is not required by law; and that this Honorable Court waive the imposition of a fine, since the Defendant does not count with the ability to pay a fine within the advisory guideline range. We respectfully submit to this Honorable Court that in order to achieve a sentence is that is sufficient, but not greater than necessary, in order to comply with the statutory directives set forth in *18 U.S.C. 3553(a),* the imposition of prison time and/or a fine is not necessary.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on July 11th of 2017.

**WE CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all parties.

*S/Jorge Molina-Mencia*

JORGE MOLINA-MENCIA, ESQ.
Attorney's Bar No. 228412
Attorney for Plaintiff
Loiza Street #2153, C-1
San Juan, Puerto Rico 00913-4512
Tel: 787-244-4443
Fax: 787-710-9825
molinamencia@yahoo.com
molinatorolawoffice@yahoo.com